USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 10, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re OCA Interpreters Litigation,

**ORDER ADOPTING REPORT AND RECOMMENDATION**

**10 Civ. 7356 (PAC) (FM)
(10 Civ. 7390)
(10 Civ. 7405)
(10 Civ. 7406)
(10 Civ. 7659)
(10 Civ. 8575)**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Dhiri Trivedi, Hrishikesh Bhattacharjee, Douga Ba, Pa B.F. Drammeh, Hamadou T. Seck, and Mamadou Hafiz Jallow bring this Title VII, 42 U.S.C. §§ 2000e, et seq., action against their former employer, the New York Unified Court System ("UCS") Office of Court Administration ("OCA").[1] Plaintiffs, who are court interpreters, argue that Defendant discriminated against them on the basis of race and national origin when it terminated their employment after Plaintiffs failed either the written English Proficiency Exam ("EPE") or an oral language proficiency exam in their respective languages after multiple attempts. Plaintiffs argue that these exams were developed and applied in a discriminatory manner.

On October 25, 2010, the Court referred the case to Magistrate Judge Frank Maas for general pretrial matters and dispositive motions. On January 31, 2013, OCA filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56. (Dkt. No. 48.) On July 16, 2013, Magistrate Judge Maas issued a report and recommendation ("R&R") to grant the Defendant's motion because Plaintiffs' 2009 Stipulation of Settlement with OCA had waived

---

[1] Some of the Plaintiffs asserted various other discrimination claims against OCA as well as their former union, District Council 37 Local 1070. On September 26, 2011, the Court adopted Magistrate Judge Frank Maas' Report and Recommendation ("R&R") to dismiss Plaintiffs' claims against the union in their entirety and all claims against OCA with exception to their Title VII claim for race and national origin discrimination. (Dkt. No. 16.)

1

their Title VII claims, and alternatively because Plaintiffs failed to show that OCA discriminated against them on a prohibited basis. (Dkt. No. 68.) Plaintiffs filed an objection on August 2, 2013. (Dkt. Nos. 70, 71.) OCA filed a response and Plaintiffs later filed a reply. (Dkt. Nos. 72, 74.)[2] For the reasons discussed below, the Court adopts Magistrate Judge Maas's R&R in its entirety and GRANTS OCA's consolidated motion for summary judgment.

## BACKGROUND[3]

Plaintiffs are New York court interpreters for languages other than Spanish ("LOTS") including Hindi, Urdu, Gujarati, Bengali, French, Wolof, Mandingo, Bambara, Fulani, and Soninke. Beginning in 2001, Plaintiffs transitioned from holding per-diem positions to becoming part- and full-time interpreters for OCA. At the time they were hired for staff positions, Plaintiffs were not required to take any formal language proficiency exams because the exams for their respective languages had not yet been developed. In 2000, OCA adopted an English Proficiency Exam ("EPE"). The OCA required candidates hired after 2000 who wished to interpret a language for which OCA had already developed a language proficiency exam—including Greek, Haitian, Creole, Polish, Russian, Arabic, Cantonese, Mandarin, Italian, and Korean—to pass both the EPE and the foreign language proficiency exam. The OCA did not, however, require such candidates who were hired prior to 2000 to take the EPE since OCA believed that the language exams adequately tested the candidates' proficiency in English. The OCA also did not require candidates who wished to interpret a language for which OCA had not yet developed a proficiency exam—such as the Plaintiffs'—to take the EPE. Rather, this group remained subject to an informal assessment procedure in which a judge interviewed them to

---

[2] Federal Rule of Civil Procedure 72(b)(2) does not contemplate a reply to a response to an objection, nor did Plaintiffs request leave to file their reply. At any rate, Plaintiffs' submission reiterates the content of the objection and adds nothing new of substance.
[3] All facts are taken from the July 16, 2013 R&R, unless otherwise noted.

assess their familiarity with their language and English.  In 2006, OCA extended the EPE to this latter group, but not the LOTS interpreters hired prior to 2000 who had already been subject to a language proficiency exam.

The OCA continued developing language proficiency exams, and in 2006 and 2008, created exams for the less-utilized languages that Plaintiffs interpreted.  Thereafter, OCA's assessment procedure required Plaintiffs to pass the EPE and then pass the language proficiency exam to remain employed.  By 2008, Bhattacharjee, Trivedi, Ba, Seck, and Jallow all passed the EPE.  During 2008 and 2009, however, each of these Plaintiffs twice failed their language proficiency exams.  Drammeh twice failed the EPE in 2008, and was not eligible to take a language proficiency exam.  In August 2009, with the assistance of their union, each of the Plaintiffs reached a settlement with OCA in which they received one more opportunity to pass their language proficiency exam, and in Drammeh's case, the EPE followed by the language exam, in exchange for waiving their right to challenge their exam results and their termination if they failed the exams.  Plaintiffs again attempted, and failed, to pass the required exams.  Trivedi, Drammeh and Seck's employment was terminated, Ba and Jallow resigned, and Bhatacharjee was not reinstated.  (Morales Aff. ¶ 60, Exs. AJ, AO, AQ, AM, AS.)

Plaintiffs' chief complaint is that after years of excellent job performance, they were discriminatorily targeted in 2008 to take language proficiency exams and the EPE when some LOTS interpreters of European and East Asian languages were not required to retake their language exams or pass the EPE.  Plaintiffs also allege that the OCA continued to employ Spanish interpreters who had failed their language exams or the EPE.

# DISCUSSION

## I. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection is made to the magistrate's recommendations, the Court is required to review the contested portions *de novo*. Id.; Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The Court "may adopt those portions of the [R&R] to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). "When a party makes only conclusory or general objections . . . the Court will review the Report strictly for clear error. . . . Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citations omitted); see also Vega v. Artuz, 2002 U.S. Dist. LEXIS 18270, at *3 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations."); Camarado v. GM Hourly-Rate Emples. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (concluding that objections did not warrant a *de novo* review in their form as "revised version[s] of the same arguments . . . presented to the Magistrate Judge," where "[e]ntire portions of the brief were transposed into the objections").

## II. Plaintiffs' Objections

Plaintiffs' objection is almost verbatim the brief they submitted in opposition to the Defendant's motion for summary judgment. Plaintiffs raise the same arguments and cite the same authority, largely without references to or discussion of the Magistrate Judge's specific

findings.  The limited portions of the objection that do address the R&R consist largely of a general, conclusory objection.  (See Dkt. No. 71 ("Objection") at 6, "In this case, the plaintiffs request *de novo* review of the entire case . . . .").  The Court will review the parts of the R&R to which no specific objections were made for clear error.  In a well-reasoned and thorough R&R, the Magistrate Judge considered and properly rejected each of the arguments that Plaintiffs raised in opposition to the Defendant's motion for summary judgment and renewed before this Court.  The Court finds no clear error in the Magistrate Judge's determinations.

In sporadic portions of the objection, Plaintiffs do make more particular challenges to the R&R.  The Court will consider each of these objections separately and under a *de novo* standard.  First, Plaintiffs argue that Magistrate Judge Maas did not accord proper weight to the performance reviews that the Plaintiffs received from co-workers and supervisors throughout their tenure.  (Objection at 7, 15; Sanchez Dec. Exs. 1-5.)  But the R&R acknowledges Plaintiffs' position that they "had been working successfully as OCA court interpreters for many years." (R&R at 32.)  Further, the Magistrate Judge found that Plaintiffs satisfied the element of their prima facie burden that requires them to demonstrate that they were qualified for their positions. (Id. at 30.)  These performance reviews do not demonstrate, however, that OCA's testing requirements were pretextual or discriminatory.  Unlike the cases cited by Plaintiffs (Objection at 24), OCA's proffered explanation for the termination was not that Plaintiffs performed poorly on the job but that they had failed the requisite exams.[4]  As for the exams themselves, the Court agrees with Magistrate Judge Maas's analysis that a reasonable fact finder cannot conclude that they were developed or applied in a discriminatory manner.

---

[4] For example, in Blanchard v. Stone Safety Corp., 935 F.2d 18, 19 (2d Cir. 1991), one of the cases cited by Plaintiffs, the Second Circuit considered performance reviews in the context of analyzing pretext because "Stone's proffered reason for selecting Blanchard for termination was that she was a poor employee, and was therefore expendable when the [reduction in workforce] became necessary."

Plaintiffs also object to "the premise that plaintiffs must prove OCA was a 'serial discriminator' in order to get to the jury." (Objection at 6.) The Court does not read the R&R as imposing an additional element that Plaintiffs must prove serial discrimination. Nonetheless, part of Plaintiffs' discrimination claim is premised on the notion that OCA developed LOTS language exams in 2006 and 2008 (ie. the languages that Plaintiffs interpreted) for the specific purpose of serving as pretext to terminate their employment if the Plaintiffs failed them. This position is factually unsupported and the Magistrate Judge properly rejected it.

Plaintiffs object to "findings of fact, including that the waiver signed to allow the plaintiffs to take a final test, forbids them from going further with this lawsuit," and that the Magistrate Judge "failed to follow Second Circuit law on the point, conveniently adopting decisions of the Southern District that were not appealed—or, if appealed, not examined in a published opinion." (Objection at 6.) This objection appears to be directed at the Magistrate Judge's determination that the Plaintiffs' waiver was "knowing and voluntary" under the factors announced in Bormann v. AT&T Comm'cs, Inc., 875 F.2d 399, 403 (2d Cir. 1989). (See Objection at 17, 20.) Plaintiffs identify out-of-circuit decisions to support their assertion that the release was unclear because it did not specifically advise Plaintiffs that they were waiving potential employment discrimination claims. (Objection at 18.) These cases, however, do not require that waivers specifically refer to discrimination claims, and there is no basis for assuming that this was a salient factor in either case cited. Moreover, in a published opinion, the Second Circuit has affirmed a district court's finding that the waiver at issue was indisputably clear, even though it constituted a general release of "all claims and/or causes of action," without reference to discrimination or ADEA claims. Tung v. Texaco, Inc., 32 F. Supp. 2d 115, 118 (S.D.N.Y. 1997), rev'd on other grounds, 150 F.3d 206, 208 (2d Cir. 1998). Finally, the Court is persuaded by district court authority that

waivers can be knowing and voluntary without an explicit reference to discrimination claims. E.g., Baba v. Warran Mgmt. Consultants, Inc., 882 F. Supp. 339 (S.D.N.Y. 1995). Here, the release is clear—it is less than five pages double-spaced in length and its terms are in simple, plain English.

    Plaintiffs object that the agreement did not expressly advise them to consult an attorney prior to executing the agreement. (Objection at 20.) They mistakenly argue that the waiver in Malaney v. El Al Isr. Airlines, 331 Fed. Appx 772 (2d Cir. 2009), was held valid because it contained such a warning. To the extent that this is an example of "Second Circuit law on the point," Plaintiffs' objection is meritless.[5] The Second Circuit considered that as only one factor among many that supported the conclusion that the waiver was knowingly and voluntarily made. While Plaintiffs are correct that in Livingston v. Adirondack Bev. Co., 141 F.3d 434, 438 (2d Cir. 1998), the Second Circuit identified as an additional factor "whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so," the court did not have occasion to consider or apply the factor because "the Magistrate Judge lacked sufficient information to conduct an appropriate inquiry." That authority, therefore, does not control here. Even if, as Plaintiffs suggest, this factor weighs in their favor, that would not change the outcome in the balancing analysis. The Court finds that Plaintiffs' education and experience, the clarity of the release, the consideration received, and their union's involvement in negotiations—which resulted in favorable concessions—outweigh the agreement's failure to specifically advise Plaintiffs to consult an attorney. At any rate, it is significant, as Magistrate Judge Maas noted, that Plaintiffs did receive substantive guidance from their collective bargaining representative during the grievance process. Further, Plaintiffs were

---

[5] Plaintiffs' objection to the R&R's reliance on unpublished Second Circuit opinions is ironic because plaintiffs cite to the same type of authority when it suits their convenience.

not dissuaded or otherwise precluded from seeking the advice of an attorney. Plaintiffs represented in the release that "the Union consulted with him/her and explicitly and thoroughly explained the terms of this Stipulation." (Morales Aff. Ex. AH ¶ 11.) Again, the Court finds persuasive the Southern District authority supporting the position that Plaintiffs' waiver was knowing and voluntary. (See R&R at 24-25.)

Plaintiffs also appear to suggest that their claims do not depend on discriminatory intent. See Objection at 5 ("I came into this case because I thought that OCA policies had discriminatory effect, not that some evil genius was manipulating a way to get rid of certain speakers"); see also id. at 15 ("[W]hatever the intention, [the result] is disparate and discriminatory"). Plaintiffs' disparate treatment claims, however, require them to prove discriminatory animus under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000) ("[T]he plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination."). Plaintiffs recited and applied this standard in their opposition to summary judgment and in their objection to the R&R. (Opposition at 19; Objection at 21.) As Magistrate Judge Maas noted, Plaintiffs' concerns about innocent intentions but disparate results may be more properly asserted as disparate impact claims, but both parties applied the disparate treatment framework. (R&R at 27-28 n.10.) In these circumstances, the Court agrees with Magistrate Judge Maas' decision to apply that framework and his determination that Plaintiffs failed to sustain their burden to show the requisite discriminatory intent.

## CONCLUSION

The Court accepts the U.S. Magistrate Judge's July 16, 2013 Report and Recommendation that summary judgment be granted to Defendant for two reasons: (1) Plaintiffs waived their Title VII claims when they signed the Release Agreement; and (2) even if the Release Agreement was not a valid waiver of Plaintiffs' Title VII rights, Plaintiffs failed to show that the OCA's rationale for requiring Plaintiffs to take language proficiency exams (which they failed) was pretextual and that the real reason for OCA's testing requirement was discriminatory. Accordingly, the Defendant's consolidated motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment and terminate the following cases: 10 Civ. 7356; 10 Civ. 7390; 10 Civ. 7405; 10 Civ. 7406; 10 Civ. 7659; 10 Civ. 8575.

Dated: New York, New York
September 9, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge